UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**WILLIAM ANTEPENKO,**

                Plaintiff,

v.                               **Case No. 16-cv-1233-pp**

**JON E. LITSCHER, et al.,**

                Defendants.

---

**DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING HIS MOTION TO APPOINT COUNSEL (DKT. NO. 9), AND SCREENING THE COMPLAINT**

---

The plaintiff, a Wisconsin state prisoner who is representing himself, filed this lawsuit under 42 U.S.C. §1983, dkt. no. 1, along with a motion for leave to proceed without prepayment of the filing fee, dkt. no. 2. In addition, the plaintiff filed a motion to appoint counsel. Dkt. No. 9. This order resolves those motions and screens the plaintiff's complaint.

I.     <u>Motion for Leave to Proceed without Prepayment of the Filing Fee</u>

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. The PLRA allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the case filing fee, as long as he meets certain conditions. One of those conditions is that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b).

1

On August 23, 2016, Magistrate Judge David E. Jones (the judge assigned to the case at that time) ordered the plaintiff to pay an initial partial filing fee of $26.74. Dkt. No. 5. On September 22, 2016, the plaintiff filed his refusal to consent to jurisdiction by a magistrate judge, so the clerk's office reassigned the case to this court. A few days later, the plaintiff paid an initial partial filing fee of $140—more than the court required. Accordingly, the court will grant the plaintiff's motion. The court will require the plaintiff to pay the remainder of the filing fee over time as set forth at the end of this decision.

II.     Screening the Plaintiff's Complaint

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is

more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual

allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### A. The Plaintiff's Allegations

The plaintiff began his incarceration at Oshkosh Correctional Institution on September 8, 2015. Dkt. No. 1 at 3. He alleges that Oshkosh has classified him as an "untreated Sex Offender." Id. at 4. A few days after his arrival, the plaintiff sent visitor questionnaires to people he wanted to add to his visitor list. Id. at 3. The plaintiff expected the approval process to take four to six weeks. Id. At some point, he asked the social worker "for Middle Center" for an update. Id. The social worker informed the plaintiff that they were waiting for defendant Joseph Brooks, a probation and parole agent, to approve adding the plaintiff's minor son to the visitor list. Id.

The plaintiff asked his mother to call Brooks. Id. She did, and according to the plaintiff, Brooks told her that Brooks did not have a problem with the

4

plaintiff receiving visits from his son. Id. A week passed without the plaintiff hearing anything, so he asked the social worker if she had heard anything from Brooks. Id. The social worker informed the plaintiff that Brooks had denied the plaintiff's request to place his son on his visitation list. Id. When the plaintiff asked the social worker why Brooks would have lied to his mother about having no objection, the social worker had no response. Id.

The plaintiff then asked defendant Rex Smith, the unit manager, why Brooks had denied his visitation request after telling the plaintiff's mother the he would approve the request. Id. R. Smith told the plaintiff that he knew Brooks personally, and that Brooks would not lie. Id. The plaintiff then asked R. Smith to assist him with an Early Program Review Committee (PRC) Action to obtain a transfer to another institution, "based on program needs and the conflict with Defendant Rex Smith." Id. The plaintiff states that R. Smith told him to be careful what he wrote, or he would end up in segregation. Id. at 4. R. Smith then called the plaintiff a liar. Id.

The next day, the plaintiff received his visitor request back from Warden Judy Smith. Id. She denied his requests for visits with his son. Id. J. Smith stated, "[T]his would be a rehabilitation hindrance and that Plaintiff may be victimized." Id. Defendant Jenny Delvaux, a unit manager, also told the plaintiff that he may be subject to victimization. Id. at 5. The plaintiff indicates that he does not understand how he could be victimized by his own son. Id.

The plaintiff filed an inmate grievance, which "was received" on November 2, 2015. Id. at 4. T. Murphy (who the plaintiff does not name as a

5

Case 2:16-cv-01233-PP   Filed 01/10/17   Page 5 of 14   Document 12

defendant) denied the grievance on November 18, 2015. Id. The plaintiff appealed the denial, and defendant Jon E. Litscher, the secretary of corrections, affirmed the denial. Id.

The plaintiff states that someone (he does not say who) advised him that he must complete sex offender programming before he could see or talk to his son. Id. He indicates, however, that he cannot get into the required program until about twenty-four months before his release date. Id. In addition, defendant Christine Zanon, the head psychologist for sex offender treatment at Oshkosh, informed the plaintiff that he will not be admitted into the program until he admits he is guilty of his underlying conviction. Id. The plaintiff states that he entered an Alford plea,[1] in which he admitted no guilt but acknowledged that the state had enough evidence to find him guilty. Id. Thus, the requirement that he admit guilt before he can get into the sex offender program is a barrier to his getting into the program; the requirement that he complete the program before he may see his son means that he cannot see his son.

The plaintiff believes that not being able to visit with his son will impact his ability to bond with his son. Id. at 5. The plaintiff alleges that also he has been denied the opportunity to have no-contact visits, video visits, telephone calls, or exchange letters with his son, although it is not clear from his

---

[1] In North Carolina v. Alford, 400 U.S. 25 (1970), the Supreme Court held that "[a]n individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." Id. at 37. These sorts of pleas—in which the defendant agrees to be sentenced, but does not admit guilty—are known as Alford pleas.

6

complaint who denied him these forms of visitation. Id. He indicates that, while his mother is on his approved visitor list, he "was advised" (he does not say by whom) that he could not call his mother's home and then talk to his son; he could speak only with the person on the approved visitor list (his mother). Id.

The plaintiff clarifies that his minor son was not the victim of his current conviction. Id. He also asserts that other "untreated Sex Offenders" are permitted to visit with their minor children. Id. He states that those other offenders will not "speak up in his favor" because they are afraid their visitation rights with their children and/or grandchildren will be taken away. Id. He also reports that when he was in the county jail awaiting resolution of his case, he was allowed to see his son. Id.

The plaintiff has asked the sentencing judge to help him resolve this issue, but the sentencing judge was unable to do so. Id. He describes the visitor room at Oshkosh—a room peopled with other inmates and their visitors, two correctional officers on duty, and surveillance cameras. Id. at 6. He notes that if his minor son were to visit him, the child would have to be accompanied by an adult visitor. Id. The plaintiff would like to see his son, but would settle for talking to him on the phone or through the mail, or even having a no-contact video visit. Id.

**B. Analysis**

The Seventh Circuit has held, following the Supreme Court, that "[p]arents have a liberty interest, protected by the Constitution, in having a reasonable opportunity to develop close relations with their children." Harris v.

7

Donohue, 17 Fed. App'x 746, 747 (7th Cir. 2006) (quoting Hodgson v. Minnesota, 497 U.S. 417, 483 (1990). On the other hand, "denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence." Stojanovic v. Humphreys, 309 Fed.Appx. 48, 50-51 (7th Cir. 2009) (citations omitted). "When balancing the interest in maintaining family relations with the reduction in liberty required by confinement, the Constitution allows prison officials to impose reasonable restrictions upon visitation, even visitation with family members." Id. at 51.

The Court of Appeals for the Seventh Circuit has held that a "prison policy that restricts a prisoner's constitutional rights is valid if it is rationally related to legitimate penological interests." Id. (citations omitted). The court will consider: "(1) whether a rational connection exists between the policy and the legitimate interest advanced to justify it; (2) whether alternative means of exercising the right are available notwithstanding the policy; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the policy." Id. (citing Overton v. Bazzetta, 539 U.S. 126, 132 (2003) and Turner v. Safley, 482 U.S. 78, 89-91 (1987)).

The court finds that the plaintiff has, at this early stage, alleged sufficient facts to allow him to proceed on a Fourteenth Amendment due process claims against defendants Joseph Brooks and Judy Smith, based on his allegations that they unreasonably denied his request to have visits with his son. The court also will allow the plaintiff to proceed against Judy Smith, based on his allegations that she denied permission pursuant to institution

8

policy requiring that plaintiff complete sex offender programming before visitations with his minor son would be allowed, and based on his allegations that he cannot access the required programming until he is within twenty-four months of his release date.

Also, the plaintiff will allow the plaintiff to proceed on a due process claim against Christine Zanon based on her refusal to allow the plaintiff to access the sex offender programming unless he admits he is guilty of the crime for which he was convicted. Based on his allegation that the plaintiff may not visit with his son until he completes the required programming, the plaintiff has made sufficient allegations to allow him to argue that Zanon's alleged refusal to allow him access to the programming effectively denies him the right to visit with his son.

The court will dismiss Rex Smith, Jenny Delvaux, and Jon E. Litscher. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Illinois Dept. of Natural Resources, 347 F.3d 1014, 1039 (7th Cir. 2003).

The plaintiff does not allege that any of these defendants made the decision to deny his visitation request. Instead, according to the plaintiff, R. Smith sided with Brooks and allegedly made veiled threats to the plaintiff, while Delvaux repeated J. Smith's rationale regarding victimization. An individual is not liable under §1983 merely because she agrees with or defends

9

a decision made by someone else. Litscher merely affirmed the decision to deny visitation rights as part of the grievance appeal process. Ruling against an inmate on a grievance does not cause or contribute to the constitutional violation. Burks, 555 F.3d at 596; George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible.")

While the plaintiff does not state which constitutional provisions he believes the defendants violated, he does allege that he has been treated differently than other "untreated sex offenders" who are allowed visits with minors. It is possible that the plaintiff is trying to assert an equal protection claim under the Fourteenth Amendment. If so, the court will not allow him to proceed on that claim. The plaintiff does not say *who* approved those other visitations. Again, §1983 liability arises only if an individual personally caused or contributed to a constitutional violation; if the plaintiff does not say who, personally, allowed other untreated sex offenders to have visits, but denied him that right, then he cannot proceed on that claim.

III.  Motion to Appoint Counsel

On September 23, 2016, the plaintiff filed a motion asking the court to recruit counsel to represent him. Dkt. No. 9. In a civil case, as opposed to a criminal case, a plaintiff has no statutory or constitutional right to the representation of counsel. The court has discretion in a civil case to decide whether to recruit a volunteer lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); Ray

10

Case 2:16-cv-01233-PP   Filed 01/10/17   Page 10 of 14   Document 12

v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, the person has to make a reasonable effort to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). In this district, a person can demonstrate he has made a reasonable effort by providing the court with the names of at least three attorneys that he has contacted, along with the dates of the contact and copies of the letters (if possible) he sent to the attorneys asking them to represent him.

After a person makes that reasonable attempt to hire counsel on his own, the court then must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

Here, the plaintiff has not satisfied the first Pruitt requirement. He has not provided the court with any evidence that he has attempted to hire an attorney on his own. The court could deny his motion on that basis alone.

Even if the plaintiff had satisfied the first step, the court still would deny his motion at this stage of the litigation. The plaintiff's claims are not complex, and the plaintiff has stated the situation clearly and understandably. His claims relate to how he was treated by the defendants. He knows the facts, and he is able to state and argue them at this stage.

The court is aware that it is very difficult for a plaintiff who is incarcerated to represent himself. Almost all inmates who ask for appointed counsel have no money, have no legal training, and have difficulty accessing legal documents and materials. The court does not have the resources to provide counsel for every plaintiff who asks for it. The court appoints counsel only in those cases in which it is clear that the issues in the case have become so complex that the plaintiff does not have the capacity to explain his case himself.

It may be that the plaintiff does not know how next to proceed. If and when the defendants file an answer to the plaintiff's complaint, he will be able to ask the defendants to answer his interrogatories (written questions) regarding the alleged events (Fed. R. Civ. Pro. 33), and will be able to conduct discovery regarding any reports or records relevant to the alleged events (Fed. R. Civ. Pro. 34). He also will be able to present the court with his version of events, through an affidavit or unsworn declaration under 28 U.S.C. §1746, in response to any motion for summary judgment that the defendants might file. The court has no evidence before it right now to indicate that the plaintiff cannot handle these tasks on his own.

The court will deny the plaintiff's motion to appoint counsel without prejudice; if the case becomes too complicated for him to handle at a later stage, he may bring his motion again at that time.

IV. <u>Conclusion</u>

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee (Dkt. No. 2).

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prisoner trust account the $210 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The Secretary or his designee shall identify the payments with the case name and number.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel (Dkt. No. 9).

The court **ORDERS** that defendants Jon E. Litscher, Jenny Delvaux, and Rex Smith are **DISMISSED**.

The court **ORDERS** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, the clerk of court will send copies of the plaintiff's complaint and this order to the Wisconsin Department of Justice for service on defendants Judy Smith, Christine Zanon and Joseph Brooks.

The court **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendants Judy Smith, Christine Zanon and Joseph Brooks shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

13

The court further **ORDERS** the plaintiff to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that failure to make a timely submission may result in the court dismissing this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send a copy of this order to the warden of the institution where the plaintiff is currently incarcerated.

Dated in Milwaukee, Wisconsin this 10th day of January, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge