UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM T. ANTEPENKO, JR.,

Plaintiff,

v.                                                          Case No. 16-cv-1233-pp

JUDY SMITH, *et al.*,

Defendants.

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DKT. NO. 24), DENYING THE
PLAINTIFF'S MOTION TO SUPPLEMENT THE RECORD, MOTION TO
DISCLOSE ELECTRONICALLY STORED INFORMATION, MOTION TO
AMEND/CORRECT THE COMPLAINT, MOTION FOR EXTENSION
OF TIME, MOTION FOR RECONSIDERATION (DKT. NO. 34),
DENYING THE PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER/PRELIMINARY INJUNCTION (DKT. NO. 35) AND DISMISSING CASE**

The plaintiff, who is representing himself, filed this lawsuit under 42
U.S.C. §1983, alleging that the defendants violated his constitutional rights.
Dkt. No. 1. On January 10, 2017, the court allowed the plaintiff to proceed on
his claim that defendants Judy Smith, Kristine Zanon and Joseph Brooks
denied him the opportunity to have in-person visits or telephone calls with his
minor son. Dkt. No. 12. On August 7, 2017, the defendants filed their motion
for summary judgment. Dkt. No. 24. That motion is fully briefed.

On September 19, 2017, the plaintiff filed a motion to supplement the
record, a motion to disclose electronically stored information, a motion to
amend or correct the complaint, a motion for an extension of time, a motion for

1

reconsideration, and a motion for a temporary restraining order or preliminary injunction. Dkt. Nos. 34, 35.

The court will grant the defendants' motion for summary judgment, deny the plaintiff's motions and dismiss the case.

## I.   RELEVANT FACTS[1]

A. <u>Parties</u>

The plaintiff has been incarcerated almost exclusively at Oshkosh Correctional Institution since September 8, 2015 (he spent a little more than a month at two other facilities). Dkt. No. 26 at ¶1. In 2008, he was convicted of sex with a child sixteen or over. <u>Id.</u> at ¶5. He was sentenced to thirty days in the county jail and one year of probation; he was not required to register as a sex offender, nor was he required to undergo any sex offender treatment in connection with this conviction. Dkt. No. 31 at 12.

In March 2014, the plaintiff was convicted of child enticement-sexual contact. Dkt. No. 26 at ¶6; Dkt. No. 27-1 at 1. The victims of his 2014 crimes were his two minor daughters. Dkt. No. 26 at ¶7. The plaintiff clarifies that he was convicted only of child enticement, not sexual assault. Dkt. No. 31 at 11.

_____

[1] The court takes the relevant facts from Defendants' Proposed Findings of Fact. Dkt. No. 26. The court takes additional facts from plaintiff's sworn Memorandum in Opposition of Defendants['] Motion for Summary Judgement and his sworn complaint. Dkt. Nos. 31, 1. <u>See</u> <u>Ford v. Wilson</u>, 90 F.3d 245, 246-47 (7th Cir. 1996) (instructing district courts to construe sworn complaints as an affidavit at the summary judgment stage).

He also explains that he entered an <u>Alford</u> plea;[2] he did not admit any guilt, but acknowledged that the state had enough evidence to find him guilty. Dkt. No. 1 at 4; Dkt. No. 31 at 11. The plaintiff continues to maintain that he is innocent of those crimes. Dkt. No. 31 at 1.

The defendants are employees of the Wisconsin Department of Corrections: Dr. Kristine Zanon is a psychologist supervisor at Oshkosh, Judy Smith is the warden at Oshkosh and Joseph Brooks is a probation and parole agent. Dkt. No. 26, ¶¶2-4.

B. <u>Initial Assessment and Treatment Decisions</u>

At admission to the Department of Corrections, all inmates whose histories include a sexual assault conviction, commitment, or offense that includes "behaviors that were sexually motivated or deviant are given an initial intake assessment to determine sex offender problem areas and appropriateness for treatment programs." <u>Id.</u> at ¶9. The assessment includes a review of the inmate's file and a clinical interview of the inmate to determine the inmate's "amenability for treatment and other programming needs." <u>Id.</u> at ¶10. There are different kinds of sex offender treatment programs (SOTP), but

---

[2] In <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), the Supreme Court held that "[a]n individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." <u>Id.</u> at 37. These sorts of pleas—in which the defendant agrees to be sentenced, but does not admit guilt—are known as <u>Alford</u> pleas.

they all have one major goal: "to reduce the inmate's risk of sexual re-offending." Id. at ¶11.

When an inmate transfers to an institution, staff place him on a waiting list for each program need that was identified in his initial assessment. Id. at ¶12. Staff consider release dates, endorsements from the parole commission, and prior program participation in deciding when it is appropriate to begin treatment. Id. at ¶13. In general, inmates closest to their release dates receive higher priority for placement in SOTP. Id. at ¶13. This is because the skills and techniques inmates learn in treatment will be more effective in reducing recidivism when they are fresh in an inmate's memory. Id.

A requirement for participation in SOTP is an inmate's willingness "to explore the thoughts, feelings, and behaviors that led up to the offense." Id. at ¶14. SOTP helps inmates "examine and identify the risky thoughts and behaviors that are directly related to their offending." Id. at ¶15. Once the inmate identifies those thoughts and behaviors, SOTP works to "implement new pro-social coping techniques and problem solving strategies to manage their risks, thereby decreasing their risk to re-offend." Id.

While an inmate does not have to admit guilt for the exact sexual assaultive behaviors charged in the criminal complaint, he does have to "admit generally to his sexual assaultive behaviors" before he will be admitted into SOTP. Id. at ¶16.

OCI staff identified the plaintiff's sex offender program need as SO-4, which is a "two year, intensive residential treatment program that addresses an inmate's sexually deviant behaviors." Id. at ¶¶17-18. Inmates suggested for the SO-4 program are those who have been identified as having "a high risk for sexual re-offending and high treatment needs." Id. at ¶18. The program requires a minimum of 400 hours. Id.

The plaintiff's adjusted release date is May 2021. Id. at ¶20. Given the waiting list for SOTP, it may be a year or so before the plaintiff can be placed in SOTP. Id. This is because inmates with earlier release dates than the plaintiff's will be placed into SOTP before him. Id. In addition, the plaintiff may not be allowed to participate in SOTP while he is incarcerated "if he cannot admit to his sexually offending behaviors." Id. at ¶21. Zanon explains that a treatment provider cannot treat the plaintiff "for something he has not accepted." Id.

C. Visitation Policy

The institution considers an inmate's criminal history, victim profile and SOTP status when deciding whether to approve or deny a visitation request. Id. at ¶22. "When an inmate's history and convictions suggest a possible deviant attraction to children, especially prepubescent children, the institution will usually deny the opportunity for potential visitors that may be similar to the victim profile." Id. When an inmate is enrolled in SOTP, the institution may re-evaluate the visitation request. Id.

DAI Policy 309.06.01 lays out the procedure for making a visitation request, and the visitation guidelines. Id. at ¶24. An inmate's social worker reviews the application; the social worker may approve the request if there is no reason to deny it, and may add a visitor to the visitor's list. Id. at ¶25. If the social worker needs clarification on a visitor request, he or she may seek a recommendation for the inmate's "DCC agent and/or the psychologist supervisor." Id. at ¶26.

When a psychologist supervisor receives a request for visitation from an inmate with a sex offender treatment need, he or she takes into consideration "various factors, including the details of the offense, the inmate's general offense history/pattern of offending, victim profiles, treatment needs, characteristics of the proposed visitor, the inmate's amenability for treatment, potential benefit or harm to the proposed visitor and the inmate, and the potential victimization of the proposed visitor." Id. at ¶27. There is no blanket rule prohibiting minors from visiting with an inmate convicted of a sexually-related offense; "[e]ach inmate and visitor request is reviewed and decided individually. Id. at ¶33. If an inmate has unmet treatment needs, however, the defendants assert that "it is generally in the best interests of the inmate and the visitor if the inmate has completed sex offender treatment, as recommended by their treating provider." Id. at ¶34.

If the social worker seeks clarification from the psychologist supervisor, the psychologist supervisor takes into account the same factors considered by

6

the social worker." Id. at ¶27. She "then recommends approval or denial and submits [the request] back to the social worker. Id. If the psychologist supervisor recommends denying the request, the request is forwarded to the unit manager, who discusses the recommendation with the social worker. Id. at ¶28-29. The unit manager "is responsible for all denials of visitation requests for inmates on their housing unit." Id. at ¶30.

If the unit manager denies a visitation request, staff completes a visitor denial form and forwards it to the proposed visitor and the inmate. Id. at ¶31. Denials may be based on various criteria listed in Wis. Admin. Code §DOC 309.08(4), including that the warden has reasonable grounds to believe the inmate's offense history indicates there may be a problem with the proposed visitation, and/or that the warden has reasonable grounds to believe that the proposed visitor may be subjected to victimization. Id.

D. The Plaintiff's Visitation Request

In September 2015, the plaintiff's minor son submitted a visitor request to visit the plaintiff. Id. at ¶35. The following month, the plaintiff's social worker (who is not a defendant) contacted Brooks, the plaintiff's probation agent, asking for his recommendation on the visitation request. Id. at ¶36. (Brooks is no longer the plaintiff's probation agent. Id. at 38.) Brooks recommended denying the request. Id. at ¶39. Brooks believed that, based on the plaintiff's criminal history, the plaintiff first should complete SOTP before

being allowed to visit with any minor, regardless of the plaintiff's relation to the child and regardless of the gender of the child. Id. at ¶39.

The plaintiff's social worker then sent Zanon, the plaintiff's psychologist, the visitation request. Id. at ¶44. Zanon recommended that the request be denied based on the plaintiff's offense history, his victim profile, the minor son's age, the plaintiff's unmet treatment needs and his lack of amenability to treatment. Id. at ¶45. Zanon believed that the plaintiff could subject his minor son to victimization during a visit. Id.

After reviewing the recommendations from Zanon and Brooks, the plaintiff's social worker also recommended the visitation request be denied. Id. at ¶48-49. The social worker supported her recommendation by citing the plaintiff's most recent offenses of child enticement-sexual contact, in which his two minor daughters were the victims. Id. at ¶49. The social worker also noted that the plaintiff had not admitted guilt for the offenses, and was in the process of appealing the conviction and sentence. Id. The social worker forwarded her recommendation to the unit manager (who is not a defendant). Id. at ¶47.

The unit manager agreed with the social worker's recommendation, and on October 27, 2015, denied the request. Id. at ¶50. The unit manager believed that: (1) the institution "had reasonable grounds to believe that [the plaintiff's] offense history involving his minor daughters could indicate a problem with having visitation with his minor son;" (2) the institution "had reasonable grounds to believe that the proposed visitor could be subjected to victimization

should he be allowed visitation;" and (3) the institution "had reasonable grounds to believe that [the plaintiff's] reintegration into the community or rehabilitation would be hindered if this visitor were approved." Id. at ¶51-53.

About a week after receiving the unit manager's denial, the plaintiff submitted an offender complaint about the denial. Id. at ¶61. Warden Smith dismissed the complaint. Id. at ¶62. There is no record that anyone ever submitted a new application for the minor son to visit. Id. at ¶57.

Because the plaintiff's minor son is not on the plaintiff's approved visitors list, the plaintiff is not permitted to call him on the telephone. Id. at ¶55. The plaintiff is permitted to have unlimited contact with his minor son through written correspondence. Id. at ¶56. Institution staff does not monitor outgoing mail. Id.

## II.   DISCUSSION

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute

over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. The Court's Analysis

The plaintiff argues that Smith, Zanon and Brooks have violated his constitutional rights by prohibiting him from having in-person visits with his minor son. According to the plaintiff, they are requiring him to enter SOTP before they will allow his son to visit, but because of general policies or practices, he will not be considered for SOTP until he is nearing the final two years of his sentence. The plaintiff also alleges that Zanon requires that he admit guilt for the crimes for which he was convicted in order to participate in SOTP, despite the fact that the plaintiff's conviction resulted from an Alford

plea and he continues to maintain his innocence in connection with those crimes. The plaintiff asserts that the defendants have imposed requirements that he cannot satisfy, effectively making it impossible for him ever to visit with his minor son.

The plaintiff has an important interest in maintaining a relationship with his minor son. Stojanovic v. Humphreys, 309 Fed. App'x. 48, 50 (7th Cir. 2009) (citing Hodgson v. Minnesota, 497 U.S. 417, 484 (1990)). But correctional institutions are well within their rights to deny prison access to particular visitors. Id. (citing Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 461 (1989)). "Accordingly, when balancing the interest in maintaining family relations with the reduction in liberty required by confinement, the Constitution allows prison officials to impose reasonable restrictions upon visitation, even visitation with family members." Id.

The U.S. Supreme Court has explained that "[a] prison policy that restricts a prisoner's constitutional rights is valid if it is rationally related to legitimate penological interests." Stojanovic, 309 Fed. App'x. at 51 (citing Overton v. Bazetta, 539 U.S. 126, 132 (2003); Turner v. Safley, 482 U.S. 78, 89-91 (1987)). Courts are to consider: "(1) whether a rational connection exists between the policy and the legitimate interest advanced to justify it; (2) whether alternative means of exercising the right are available notwithstanding the policy; (3) the impact that accommodating the right will have on prison

resources; and (4) the absence of alternatives to the policy." Id. (citing Overton, 539 U.S. at 132; Turner, 482 U.S. at 89-91).

Here, the plaintiff does not argue that he has a constitutional right to be enrolled in SOTP[3], nor does he argue that he should not be required to enroll in SOTP. Instead, the plaintiff argues that two policies prevent him from immediate enrollment in SOTP. He argues that the defendants are requiring him to participate in SOTP before they will recommend that he be allowed to visit with his minor son, but are blocking him from participating any time soon. The first policy the plaintiff identifies is the policy providing that inmates who are closer to the end of their sentences will be given priority in SOTP enrollment. The second policy is the policy providing that, before being considered for SOTP, inmates must admit guilt for the underlying deviant behaviors associated with the crimes of which they were convicted. The court will consider each policy in light of the four factors Stojanovic factors.

1.    *Enrollment Priority*

Zanon explains that, because of limited resources, there are a limited number of sex offender groups running at any particular time. Generally,

_____

[3] Nor could he make such an argument. In Richmond v. Cagle, the court held that, "[t]o the extent that the plaintiff is arguing that the State of Wisconsin created an entitlement to programs for sex offenders, . . . liberty interests created by a state are 'generally limited to freedom from restraint which . . . impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Richmond v. Cagle, 920 F. Supp. 955, 958 (E.D. Wis. 1996) (quoting Sandin v. Conner, 515 U.S. 472 (1995)).

inmates who are closest to their release dates are given a higher priority to gain entry, under the theory that the skills and coping mechanisms participants learn will be more effective when they are fresh in the participant's mind.

The policy of giving enrollment priority to inmates who are closest to their release dates satisfies the rational connection prong of the test. Reducing recidivism is a legitimate penological interest, and providing treatment to inmates close to their release date so that they will better remember what they learned once they are out rationally supports that interest.

As to the second prong, the defendants explain that the plaintiff has an alternative way to maintain his relationship with his son: he can communicate with him through letters. The plaintiff argues that he also should be allowed to speak on the phone with his son, which he argues is better way of maintaining a relationship. However, alternatives "need not be ideal . . . they need only be available." Overton, 539 U.S. at 135. "Prison officials are simply not required, as a matter of constitutional law, to provide [an inmate] with the 'best method' of raising his son." Wirsching v. Colorado, 360 F.3d 1191, 1200-01 (9th Cir. 2004). The fact that the plaintiff is able to maintain contact with his son through means other than visitation supports the reasonableness of the policy.

The third prong considers the impact on prison resources of accommodating the plaintiff's right. In the plaintiff, the prison has an individual convicted of committing sex offenses that victimized two of his minor children. He has not received treatment, or admitted that he has any sexually

assaultive tendencies, even as a general proposition. While the plaintiff has a right to maintain his innocence, the prison must assess the risk of allowing him contact with another of his minor children under the prison's watch, and under these circumstances. To grant the request could expose the prison to liability. It likely would require the prison to assign limited staff to monitor such visits. Even if it were the court's role to dictate administrative policy to the prison (which it is not), requiring the prison to enroll the plaintiff in SOTP now, or to change its policy to allow placement for sex offenders earlier in their incarceration terms, would increase the strain on already-strained resources. And it would defeat the reasonable goal of equipping inmates with tools and coping mechanisms during the time they need it most—just before they are to be released into the community.

The final prong considers whether there are any easily implemented alternatives to the policy. The court does not see any, for the reasons discussed in the previous paragraph.

The policy of prioritizing inmates who are closest to their release dates for enrollment in SOTP is constitutionally valid, because it is rationally related to legitimate penological interests.

2.     *Admission of Guilt*

Zanon explains that, in order to participate in SOTP, an inmate needs to be willing to explore the thoughts, feelings and behaviors that caused the inmate to commit the offense of conviction. SOTP helps inmates look at the

14

reasons for what they did. Once they identify those reasons, inmates can then work on coping techniques and problem solving strategies to manage their risks, decreasing the risk of reoffending. Like many people struggling to conquer self-destructive or destructive behaviors, a sex offender can't learn to control behaviors and actions that he doesn't admit he engages in. Zanon clarified that, while an inmate does not have to admit guilt for the specific sexually assaultive behaviors stated in the criminal complaint in order to participate in SOTP, the inmate does have to admit generally to his sexual assaultive behaviors.

Again, there is a rational connection between this policy and a legitimate penological interest. The prison has an interest in trying to rehabilitate inmates, so that they will not re-engage in sexual assaultive behaviors after they are released. Zanon explained that she cannot effectively treat an inmate who refuses to acknowledge that he is at risk for committing sexual assaultive behaviors. Requiring inmates to acknowledge that they are at such risk before they are enrolled in SOTP furthers the institution's interest in rehabilitation. See Doe v. Heil, 533 Fed. App'x. 831, 840 (10th Cir. 2013) ("The state's interest in rehabilitating sex offenders is a valid one, and the requirement for admission of responsibility is considered a legitimate part of the rehabilitative process.").

As to the second prong, the court agrees that there is an alternative for the plaintiff to use in maintaining a relationship with his son—letters. As to the third prong, based on Zanon's assertion that it is largely ineffective to provide

treatment to an inmate who refuses to acknowledge he needs that treatment, requiring the prison to provide treatment to inmates who refuse to admit that they need it would further strain already limited resources.

Finally, there are no feasible alternatives to the policy. The plaintiff argues that, though he maintains his innocence, he is willing to receive treatment. He argues that his willingness to participate whether he needs the treatment or not should be sufficient to qualify him for enrollment in SOTP. But there is no point in a prison spending limited time and resources providing treatment that, accordingly to Zanon, will be largely ineffective, particularly when it would force the institution to provide unwanted treatment to one inmate at the expense of another who may acknowledge the need for it and choose to participate.

The policy requiring inmates to acknowledge guilt for sexually assaultive behaviors before enrolling them in SOTP is constitutionally valid, because of its reasonable relationship to legitimate penological interests.

Because the two policies that the plaintiff challenges are constitutionally permissible, the court will grant the defendants' motion for summary judgment.[4]

---

[4] The defendants asked that, if the court denied summary judgment on the basis of the plaintiff's constitutional claim, it should grant summary judgment because they are entitled to qualified immunity. Dkt. No. 25 at 9. The court need not reach this issue.

**III.  THE PLAINTIFF'S MOTION TO SUPPLEMENT THE RECORD, MOTION TO DISCLOSE ELECTRONICALLY STORED INFORMATION, MOTION TO AMEND/CORRECT THE COMPLAINT, MOTION FOR EXTENSION OF TIME, MOTION FOR RECONSIDERATION, AND MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**

On October 19, 2017, less than two weeks after the defendants' motion for summary judgment was fully briefed, the court received two documents from the plaintiff. The first one contained a petition to supplement the record, to disclose electronically stored information, to amend the complaint to add four new defendants, to extend time to "correctly answer" the summary judgment motion, and to reconsider his prior request for appointment of counsel. Dkt. No. 34. The second was a petition for a temporary restraining order and preliminary injunction. Dkt. No. 35. Both of these motions appear to have been prompted by the plaintiff's annual Program Review Committee hearing, which took place on September 13, 2017. Dkt. No. 34 at 2.

In connection with the first motion, the plaintiff says that he went to the PRC meeting because he'd talked with his social worker about getting transferred to another institution, because of a conflict of interest with Zanon. Dkt. No. 34 at 2-3. (The conflict he identifies is that Zanon has permanently barred him from SOTP, because he will not admit his guilt. Id. at 3.) He asserts that the members of the PRC denied his transfer request, effectively barring him from obtaining SOTP at any other facility. Id.

Regarding the motion for injunctive relief, the plaintiff alleges that his cell was searched on September 16, 2017, and that he was sanctioned for

having a "red cleaning rag" in the cell. Dkt. No. 35 at 2. He claims that all the other units allow inmates to have cleaning rags in their cells, and that the sanction was imposed as a result of retaliation by Zanon. Id.

The court will deny the plaintiff's motions. The first motion seeks to amend the complaint to name the four people in the PRC meeting as defendants. Dkt. No. 34 at 5. The September 2017 denial of the plaintiff's transfer request does not arise out of the same transaction or occurrence that resulted in the plaintiff being denied visitation with his minor son, nor do they involve the same defendants. Under Federal Rule of Civil Procedure 18(a), "[u]nrelated claims against different defendants belong in different suits" so as to prevent prisoners from dodging the fee payment or three strikes provisions in the Prison Litigation Reform Act. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). The court understands that the plaintiff wants to be transferred because he believes that Zanon is the reason he cannot get into SOTP, and that the individuals at the PRC meeting were helping Zanon retaliate against him for suing her. If the plaintiff wants to pursue those claims, the plaintiff must file a separate lawsuit and pay a separate filing fee. The court will not allow him to amend this complaint to bring those separate claims.

Because the court will not allow the plaintiff to amend his complaint, the court will not allow the plaintiff to serve discovery requests relating to the PRC hearing, or to supplement the record. Dkt. No. 34 at 4.

The plaintiff's request for an extension of time to "correctly" respond to the summary judgment motion is related to the claims in this case, but the court will deny it. In their reply brief, the defendants noted that the plaintiff did not respond to the defendants' proposed findings of fact, and asserted that the court should accept those facts as undisputed. Dkt. No. 33 at 1. In this motion, filed eleven days after the reply, the plaintiff states that he did not respond to the defendants' proposed findings of fact because he did not know that he was supposed to. Id. at 6. He says he responded to the summary judgment motion as best he could with his limited resources and capabilities, dkt. no. 34 at 6, and asks that if "the court feels that the plaintiff did not do a good enough job" in responding to the summary judgment motion, the court give him an extension of sixty days to respond to the defendants' proposed findings, dkt. no. 34 at 7. The court notes that on April 7, 2017, it issued a scheduling order. Dkt. No. 21. It attached to the scheduling order its local rule governing summary judgment motions, including Civil Local Rule 56(b)(ii)(B), which requires a party opposing summary judgment to file "a concise response to the moving party's statement of facts," with directions on how to do so. Id. at 21. The plaintiff did have notice that he needed to respond to the findings of fact.

More to the point, the court is not granting summary judgment because the plaintiff did not do a good enough job responding to the defendants' motion. The plaintiff is an intelligent man; the court has been able to understand his pleadings and his arguments very well. The court is granting

19

summary judgment because it finds that the defendants are entitled to judgment as a matter of law.

The court also denies the plaintiff's request that it reconsider appointing counsel to represent him. Dkt. No. 34 at 7. The plaintiff does not need a lawyer to make his argument that the defendants are ignoring the <u>Alford</u> standard; he has made that argument himself. Nor does he need an attorney to give testimony regarding the SOTP, or the institution's requirement that an inmate admit he needs treatment. The plaintiff has presented his case clearly and intelligently, despite the fact that he is not a lawyer.

Finally, the court will not grant the plaintiff's motion for a restraining order or temporary injunction to prevent retaliation against him, or to require OCI to transfer him to another institution. Dkt. No. 35. The court has determined that the defendants have not violated the plaintiff's constitutional rights, and the plaintiff has not established the irreparable harm and lack of adequate remedy at law required for the extraordinary remedy of injunctive relief.

## III.   CONCLUSION

The court **GRANTS** the defendants' motion for summary judgment. Dkt. No. 24**.**

The court **DENIES** the plaintiff's motion to supplement the record, motion to disclose electronically stored information, motion to amend/correct

the complaint, motion for extension of time, motion for reconsideration. Dkt. No. 34.

The court **DENIES** the plaintiff's motion for temporary restraining order/preliminary injunction. Dkt. No. 35.

The court **DISMISSES** the case. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 1st day of February, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**